In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00243-CV
_____

IN THE INTEREST OF L.M. AND E.M.

_____

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV1205676
_____

MEMORANDUM OPINION

The trial court terminated the parental rights of B.M. and T.M. to their two children, who were born in 2010 and 2011. On appeal, B.M. and T.M. challenge the legal and factual sufficiency of the evidence to support terminating the parental rights of the children's father, T.M., and appellants also contend they should receive a new trial because their appointed counsel failed to obtain discovery from the State. We affirm the trial court's judgment.

1

Legal and Factual Sufficiency

The decision to terminate parental rights must be supported by clear and convincing evidence. *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008). A judgment will be affirmed if a parent committed one or more predicate acts or omissions and termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2012); *see also J.L.*, 163 S.W.3d at 84.

In reviewing the evidence for legal sufficiency, we consider all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *J.L.*, 163 S.W.3d at 84–85. We assume the factfinder resolved any disputed facts in favor of its finding, if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* at 85 (quoting *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

When we review a termination of parental rights for factual sufficiency, we give "due consideration" to any evidence that the factfinder could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266; *In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient if the disputed evidence that does not reasonably support the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction that the fact at issue was true. *Id.*

## Factual Background

The trial court found that B.M. and T.M. (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the children's physical or emotional well-being; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain return of the children in Department care for not less than nine months as a result of a removal for abuse or neglect. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), and (O). The appellants challenge only the findings that apply to T.M.

B.M. testified that she had been abusing Soma and Xanax and passed out in her car while L.M. was in his car seat outside of the car. The incident resulted in her conviction for endangering a child. Child Protective Services temporarily removed the child. L.M. was reunited with the family and the case was dismissed, but the following week B.M. was arrested for driving while intoxicated while the children were in the vehicle with her. That incident resulted in a conviction and the filing of the termination proceeding now under appellate review.

T.M. admitted he was aware of his wife's alcohol and drug abuse. He was aware of the circumstances surrounding the incident that resulted in B.M.'s conviction for endangering a child. Although he was aware of the facts, he did not take precautions to prevent B.M. from driving with the children in the car. T.M. explained that he was at work and B.M. had not said or done anything to make him believe she might be drinking alcohol or using drugs on that occasion. According to T.M., B.M. was bringing the children to visit with T.M. during his work break when she was arrested. When the CPS investigator visited their home the following day T.M. told the investigator that B.M. was driving into town with the children.

The trial court heard evidence that T.M. was aware that his wife had a substance abuse problem and that she drove with the children. T.M. suggested his efforts to protect his children from B.M.'s endangering behavior included

4

restricting her access to transportation. He claimed he drove their only vehicle to work, and claimed he provided transportation for the family, but he could not explain how B.M. was arrested for driving while intoxicated. On further examination T.M. explained that he had been using a borrowed truck, which meant T.M. did allow B.M. to have access to a car while he was at work and the children were alone with her.

A parent's abuse of drugs and alcohol may support a finding of child endangerment. *See In the Interest of R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Knowing that his wife was abusing drugs and alcohol, and knowing that she would drive with the children in the car, T.M. left the children in her care. The trial court could rationally form a firm conviction or belief that T.M. knowingly placed the children with a person who engaged in conduct which endangers the children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(E). Accordingly, we need not address the sufficiency of the evidence to support a violation of section 161.001(1)(D) and (O). *See In the Interest of C.A.C.*, No. 09–10–00477–CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.).

Regarding the children's best interest, we consider a non-exhaustive list of factors: (1) desires of the children; (2) emotional and physical needs of the children

now and in the future; (3) emotional and physical danger to the children now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the children; (6) plans for the children by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code. Ann. § 263.307(b) (West 2008).

The children were doing well in their current placement with a relative. The Department's goal was "related adoption." T.M. testified that he had prepared bedrooms and a play area in their home for the children's return. Their landlord testified that they kept the house clean and the lawn mowed. T.M. testified that he works full time. He wants his wife to stay sober, but he stated that he cannot stop her if he is at work.

At the time of the trial, B.M.'s drug and alcohol treatment was still a work in progress. While she was on community supervision B.M. was unsuccessfully discharged from an outpatient alcohol and drug abuse treatment program. She subsequently entered an inpatient treatment facility. B.M. claims to have

successfully completed an in-patient rehabilitation program after her arrest for driving while intoxicated, but admits to repeated relapses. B.M. was arrested again at a transitional facility; T.M. told the caseworker that B.M. had been drinking that night and engaged in an altercation. She was discharged because she failed to remain sober. As a condition of probation, B.M. was ordered to participate in an out-patient treatment program. B.M. was in a new in-patient program, but she experienced some problems with compliance, and she had not completed the program at the time of trial.

The evidence of endangering conduct is probative of the best interest determination. *C.H.*, 89 S.W.3d at 28. In determining whether termination of T.M.'s parental rights would be in the best interest of the two children, the trial court could consider that B.M. would be the children's caretaker if they were returned to T.M. The trial court could rationally conclude that B.M. had not conquered her drug and alcohol dependence, that her drug and alcohol abuse had endangered the children in the past and could again in the future, and that T.M. had not protected the children from B.M.'s endangering conduct during her lapses from sobriety and would fail to protect them if B.M. relapsed while the children were with her. The record shows clear and convincing support for the trial court's best-interest finding.

The trial court heard testimony from B.M. and from a counselor that B.M. had made progress in her treatment. She was on the fourth step of a twelve-step plan. She completed an anger management packet. She wrote "a goodbye letter to alcohol." The counselor stated that her progress was acceptable. T.M. attended support meetings, and he would help with the housework and watch the children if she needed time to relax. B.M. testified that T.M. is better educated about her disease now, and he would take the children and divorce her if she relapsed. The evidence that does not reasonably support the finding shows that T.M. made an effort to reunite his family and has good intentions motivated by love for his children and his spouse, but the evidence is not so significant that the trial court could not have reasonably formed a firm belief or conviction that termination of T.M.'s parental rights is in the best interest of the children. *See J.F.C.*, 96 S.W.3d at 266. We overrule issue one.

Ineffective Assistance of Counsel

To establish ineffective assistance, the appellate record must show that counsel's performance was deficient and the deficient performance so prejudiced the defense that the appellants were deprived of a fair trial. *In the Interest of M.S.*, 115 S.W.3d 534, 545 (Tex. 2003). We apply an objective standard of reasonableness, presuming that counsel's conduct falls within the wide range of

reasonable professional assistance, including the possibility that counsel's actions or omissions may have been based on strategy or a belief that a particular action was not warranted. *Id.* at 549. We consider all circumstances surrounding the case and primarily focus on whether counsel performed in a reasonably effective manner. *Id.* at 545.

B.M. and T.M. argue the record shows absolutely no discovery was conducted in the case. During cross-examination of a witness from Child Protective Services, counsel asked if the witness had documentation regarding efforts taken to get B.M. into a successful inpatient facility. When the witness replied that she did not have it, counsel asked, "Isn't that pretty important to have documentation of something that went on during my client's case? Wouldn't you need to provide that to the Court?" Counsel for the Department objected, adding "[t]his is not the time for discovery. [Counsel] did not do discovery in this case. If she wanted the documentation, she could have gotten it."

The record in this case is silent regarding the reasons or strategies behind trial counsel's actions. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("We may not speculate to find trial counsel ineffective when the record is silent regarding counsel's reasons for his actions."). The record does not show whether any formal

or informal discovery was conducted, nor does the record reveal what evidence counsel failed to discover. *In the Interest of K.M.H.*, 181 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2005, no pet.). It is possible that counsel had seen the document referred to, or knew the witness could not produce the document, and asked the witness about it as a matter of trial strategy to challenge the credibility of the witness. Moreover, because we do not know what evidence was known to counsel or what documents counsel may have been unaware of before trial, B.M. and T.M. cannot demonstrate that, but for the alleged errors by counsel, the result of the termination proceeding would have been different. *See In the Interest of A.B.*, 372 S.W.3d 273, 276 (Tex. App.—Fort Worth 2012, no pet.). We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on October 18, 2013
Opinion Delivered November 7, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.