**AFFIRM; and Opinion Filed February 17, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01293-CV

## IN THE INTEREST OF M.J.P., A CHILD

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-30044-2015**

## MEMORANDUM OPINION
Before Chief Justice Wright and Justices Fillmore and Brown
Opinion by Justice Fillmore

In this accelerated appeal of the trial court's judgment terminating his parental rights to his daughter, M.J.P., appellant Father contends the evidence is legally and factually insufficient to support the trial court's statutory grounds for termination under section 161.001(b)(1) of the family code and its finding that termination of his parental rights is in M.J.P.'s best interest under section 161.001(b)(2) of the family code. We affirm the trial court's judgment terminating Father's parental rights to M.J.P.

### Background

On March 24, 2015, the Texas Department of Family and Protective Services (the Department) filed a suit affecting the parent-child relationship (SAPCR) in which it sought

temporary managing conservatorship of M.J.P.[1]  The original petition in the SAPCR stated minor child M.J.P., who resided with Father, had been taken into the possession of the Department on March 23, 2015, following the Department's receipt of a "priority one" referral from a person with whom M.J.P. had been in contact online and to whom M.J.P. had made an outcry concerning ongoing sexual abuse by Father.  The trial court signed a temporary order appointing the Department the temporary conservator of M.J.P.  On May 11, 2015, the Department filed an amended petition in which it sought termination of Father's parental rights to M.J.P.[2]  Prior to the termination trial, Father was convicted in a criminal trial of continuous sexual abuse of M.J.P., a child under the age of fourteen, and sentenced to life imprisonment.  *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2016).

At the August 16, 2016 termination trial, Gerald Burk, a Collin County Sheriff's Office investigator, testified regarding his investigation of the alleged sexual abuse of M.J.P. by Father.  M.J.P. was fifteen years of age at the time of Burk's investigation.  Burk contacted M.J.P. at her residence.  At the time, M.J.P. was not enrolled in school.  After speaking with M.J.P., Burk contacted the Department to recommend that the Department make contact with M.J.P.  M.J.P. was contacted at her residence by a Department investigator; M.J.P. then accompanied the Department investigator to the Children's Advocacy Center (the CAC) to be interviewed.  During the forensic interview at the CAC, M.J.P. made an outcry regarding sexual abuse by Father.  Father met with Burk on April 10, 2015.  Father agreed to provide a statement and undergo a polygraph examination, and a polygraph examination took place at the CAC.

---

[1] The SAPCR also sought temporary managing conservatorship of Father's daughter C.A.P.  Prior to the time of the termination trial, C.A.P. reached the age of eighteen, and the Department no longer sought termination of Father's parental rights to C.A.P.

[2] At the time of filing the amended petition, the Department also sought termination of Mother's parental rights to M.J.P.  However, the trial court signed an order of monitored return of M.J.P. to Mother on March 16, 2016.  *See* TEX. FAM. CODE ANN. § 263.403 (West 2014).  At the time of the termination trial, the Department advised the trial court that it was not seeking termination of Mother's parental rights to M.J.P., and Mother is not a party to this appeal.

Following the polygraph examination, Burk interviewed Father. Father confessed to sexually abusing M.J.P. during the videotaped interview. Father admitted having sex with M.J.P. twenty to twenty-five times during a two-year period. M.J.P. was thirteen years of age during a portion of that period. Burk testified Father admitted engaging in vaginal, oral, and anal sex with M.J.P., as well as using his finger to "loosen" M.J.P.'s vagina and anus, tying M.J.P. with rope, shaving M.J.P.'s vaginal area, massaging M.J.P.'s breasts, and utilizing a vibrator to stimulate M.J.P. Admitted into evidence were two drawings Father made during his interview indicating how far he inserted his finger into M.J.P.'s vagina and anus and how far he inserted his penis into M.J.P.'s vagina. Burk testified Father made excuses for sexually abusing M.J.P., stated M.J.P.'s alter-personality forced him to have sex with her,[3] and tried to portray himself as the victim. Burk testified Father only demonstrated remorse during the time he wrote a statement in the form of a "letter" of apology to M.J.P. following his interview.

The videotape of Father's interview by Burk was admitted into evidence. In that interview, Father stated that his sexual encounters with M.J.P. began when he was forty years old and M.J.P., born December 27, 1999, was thirteen years old. Father stated the first time he had sex with M.J.P., he awoke to find M.J.P. on top of him and he was being sexually attacked by one of M.J.P.'s multiple personalities, John. According to Father, he thought that if he had sex with M.J.P., she would not want to do it again. Father stated M.J.P. initiated each sexual encounter and "attacked" him every time. Most of the sexual encounters occurred at various locations across the United States when M.J.P. was accompanying Father on his long-haul trucking trips. One sexual encounter occurred at Father's house when they were celebrating on New Year's Eve. On that occasion, Father had a couple of alcoholic drinks, M.J.P. had a

---

[3] Burk testified he looked over some of M.J.P.'s mental health records and that M.J.P. had received care in at least three mental health treatment centers.

"couple of shots" of an alcoholic beverage, and M.J.P. "attacked" him. Father indicated that prior to 2015, he had sex with M.J.P. approximately one to three times a month during each of the six months M.J.P. accompanied him on long-haul trucking trips. Father also stated he had sex with M.J.P. approximately twenty-five times over a period of two years. According to Father, he ejaculated in M.J.P.'s vagina fourteen times, inserted his penis into her anus once, inserted his finger into her vagina, and M.J.P. performed oral sex on him once. He also stated he bound M.J.P. with a rope, utilized sex "toys," shaved M.J.P.'s vagina, and massaged her breasts. Father stated he had taken photographs of M.J.P. in bondage utilizing his phone. According to Father, he had sex with M.J.P. perhaps twice during January 2015, no sexual encounter in February 2015, and the last sexual encounter occurred on March 11, 2015. Father stated that if he could apologize to M.J.P., he would tell her he "should have gotten [her] help," ask for her forgiveness, and tell her he could forgive her. Father stated he was sorry for what happened, but he had a thirteen-year-old child dictating his life. At the end of the interview by Burk, Father wrote a statement in the form of a letter to M.J.P. that was admitted into evidence in which he wrote, "I wish I got you help when this started," and that M.J.P.'s alternate personality, John, made him a "prisoner to keep [M.J.P.] happy."

Father testified at the termination trial. Father indicated that prior to meeting with law enforcement officers on April 10, 2015, he was aware of the nature of M.J.P.'s allegations of his sexual abuse of her. Father stated he did not recall telling Burk during the interview that he sexually abused M.J.P. Father recalled being present at his criminal trial and listening to M.J.P.'s testimony about the "explicit sexual conduct [he] had with her," but he stated M.J.P. and her older sister, C.A.P., were lying about him sexually abusing them. Father stated he did not recall the videotape of his interview by Burk being played at his criminal trial. Father invoked

–4–

the protections of the Fifth Amendment and did not answer questions as to whether he shaved M.J.P.'s genital area, massaged M.J.P.'s breasts, and engaged in oral and anal sex with M.J.P.

Father identified the letter of apology he wrote to M.J.P. and acknowledged it contained his handwriting and signature. He invoked the protections of the Fifth Amendment and refused to answer questions regarding the drawings of his hand and penis admitted into evidence to show how far he inserted his finger into M.J.P.'s vagina and anus and his penis into M.J.P.'s vagina. Father testified he did not utilize a vibrator to stimulate M.J.P. He then invoked the protections the Fifth Amendment and refused to answer a question regarding whether he had told Burk in the interview that he utilized a vibrator and had discarded it. He then testified he lied to Burk in the interview when he stated he used a vibrator to stimulate M.J.P. but he had since thrown it away. Father acknowledged that "according to the video[tape of the interview by Burk]," he had admitted to having sex with M.J.P. Father also stated that "according to the confession," he tied up M.J.P., but he testified he had lied about that in the "confession." Father invoked the protections of the Fifth Amendment and refused to answer questions regarding whether he had told Burk he used his fingers to loosen M.J.P.'s vagina or that he enjoyed having sex with M.J.P.

According to his testimony, Father was first concerned about M.J.P.'s mental health when she was eleven years old. M.J.P. was taken to an inpatient treatment facility because she had tried to slit her wrists with a knife. Father agreed that a child sexually abused by her father might battle depression and engage in self-harming activities. Father stated M.J.P. has exhibited six alternate personalities, the most prominent being John. Father gave inconsistent and conflicting testimony regarding whether he believed the trial court should terminate his parental rights and the course of action that would be in M.J.P.'s best interest. At one point in his testimony, Father indicated he believed it is in M.J.P.'s best interest that his parental rights not be terminated because he had saved M.J.P. from committing suicide eleven times and had

convinced her to stop cutting herself. Later in Father's testimony, he reversed his position by stating he did not know what benefit to M.J.P. would result from retention of his parental rights, did not know why the court should refrain from terminating his parental rights, and it was not in M.J.P.'s best interest for him to retain his parental rights. Finally, in a further reversal of his position, Father stated he did not believe his parental rights should be terminated and he "would still love to be able to see her."

Samantha Kelly appeared at the termination trial as a representative of the Department. Based on her investigation, Kelly believed M.J.P.'s allegations of sexual abuse by Father were true and a continuing parent-child relationship was inappropriate. According to Kelly, M.J.P. underwent inpatient mental health treatment in 2012 when she was twelve years old. Kelly testified M.J.P. was currently participating in counselling provided by the CAC, and she will require continuing extensive therapy. Father's criminal trial caused significant emotional stress for M.J.P.; however M.J.P. was relieved that he received a sentence of life imprisonment. According to Kelly, Father's sexual abuse of M.J.P. caused both emotional and physical harm, and Kelly believed M.J.P. would be in danger emotionally and physically if Father's parental rights were not terminated. Further, Kelly noted Father is unable to provide a place for M.J.P. to live due to his incarceration. As a result, Kelly recommended Father's parental rights to M.J.P. be terminated and believed termination of those rights to be in M.J.P.'s best interest. Kelly indicated her recommendation took into account the wishes of M.J.P.

Dan Powers, Senior Vice President and Clinical Director for the CAC, testified at the termination trial. Powers was present when M.J.P. testified at Father's criminal trial, and he has supervised M.J.P.'s treatment at the CAC. Powers testified "from a clinical standpoint" at Father's criminal trial regarding what M.J.P. had endured as a victim of sexual abuse by Father.

At the termination trial, Powers testified M.J.P. has experienced trauma far beyond most children he has worked with. According to Powers, sexual abuse of children is about power and control, and if Father continued to have power and control over M.J.P., emotional abuse would continue and negatively impact M.J.P.'s healing. In connection with observing M.J.P. testify at Father's criminal trial and in overseeing M.J.P.'s treatment, Powers noted M.J.P has never wavered in her accounts of what Father had done to her and never recanted her accusations against Father, which supported Powers's opinion that Father's parental rights should be terminated. Powers testified it is in M.J.P.'s best interest, including her emotional and mental healing, that Father's parental rights be terminated.

In May 2015, the trial court appointed Sarah Depew to serve as a Court Appointed Special Advocate on behalf of M.J.P. In her testimony at the termination trial, Depew recommended termination of Father's parental rights. According to Depew, M.J.P. had been traumatized by Father's actions and did not want to have any contact with Father. Depew testified it was in M.J.P.'s best interest that her relationship with Father be completely severed and that M.J.P. be allowed to move on from the abuse Father had inflicted in the past.

M.J.P.'s Mother testified at the termination trial that she and Father had married in 1998 and separated in January 2011. Mother believed Father sexually abused M.J.P. and C.A.P., M.J.P.'s older sister, prior to the time Mother and Father were divorced in 2013. Mother testified M.J.P. has never recanted her allegations against Father, and Mother believed those allegations. Mother believed that M.J.P. would suffer emotional consequences if Father's parental rights were not terminated.

In the trial court's October 19, 2016 judgment entitled "Final Order in Suit Affecting Parent-Child Relationship–Termination of Parental Rights of Respondent Father and Appointment of Managing Conservator," the trial court found by clear and convincing evidence

that Father (1) knowingly placed or knowingly allowed M.J.P. to remain in conditions or surroundings which endanger her physical or emotional well-being, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); (2) engaged in conduct which endangers M.J.P.'s physical or emotional well-being, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); (3) has been convicted for being criminally responsible for the serious injury of M.J.P. under penal code sections 22.02 (aggravated sexual assault), 25.03 (prohibited sexual conduct), and 21.02 (continuous sexual abuse of a young child), *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(L)(viii), (xi), & (xiv); (4) failed to comply with provisions of a court order that established the actions necessary for him to obtain return of M.J.P., who had been in the temporary or permanent managing conservatorship of the Department for not less than nine months as a result of the M.J.P.'s removal under Chapter 262 for abuse or neglect, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); and (5) knowingly engaged in criminal conduct that resulted in his conviction for an offense and confinement or imprisonment and inability to care for M.J.P for not less than two years from the date of filing of the petition seeking to terminate his parental rights to M.J.P., *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(Q)(i) & (ii). The trial court also found termination of Father's parental rights is in M.J.P.'s best interest, *see* TEX. FAM. CODE ANN. § 161.001(b)(2). Father filed this appeal of the trial court's October 19, 2016 judgment terminating his parent-child relationship with M.J.P.

### Discussion

A trial court may terminate the parent-child relationship if the factfinder determines (1) a parent committed one or more of the enumerated statutory acts in section 161.001(b)(1) of the family code, and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)–(2) (West Supp. 2016); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re D.W.*, 445 S.W.3d 913, 924 (Tex. App.—Dallas 2014, pet. denied). In five issues, Father challenges the legal and factual sufficiency of the evidence to support the statutory grounds for termination

under section 161.001(b)(1) of the family code found by the trial court. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)  In his sixth issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of Father's parental rights is in M.J.P.'s best interest. *See id.* § 161.001(b)(2).

*Standard of Review*

Because the fundamental liberty interest of a parent in the care, custody, and control of his child is one of constitutional dimensions, *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000), involuntary parental termination proceedings must be strictly scrutinized. *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014); *see also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).[4]  In parental termination cases, due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

On appeal, we apply a standard of review that reflects the elevated burden of proof at trial. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014) (factual sufficiency); *In re J.F.C.*, 96 S.W.3d 256, 264–66 (Tex. 2002) (legal sufficiency).  This means both legal and factual sufficiency review of a judgment terminating parental rights require a reviewing court to consider all the evidence to determine whether the factfinder could reasonably form a firm belief or conviction that the grounds for termination are proven. *In re J.D.B.*, 435 S.W.3d 452, 462 (Tex. App.—Dallas 2014, no pet.) (citing *In re J.F.C.*, 96 S.W.3d at 265–66).  Further, under both the legal and factual sufficiency standards, the appellate court must defer to the factfinder's

---

[4] However, parental rights are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."); *see also In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

determinations as to witness credibility. *In re N.T.*, 474 S.W.3d 465, 475 (Tex. App.—Dallas 2015, no pet.).

When the legal sufficiency of the evidence is challenged in a case involving the termination of parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could form a firm belief or conviction that its finding is true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *J.F.C.*, 96 S.W.3d at 266). Giving deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, we assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. *Id.* If, after conducting a review of the record evidence, we determine no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

When conducting a factual sufficiency review of a judgment terminating parental rights, we give "due deference" to the factfinder's findings and do not supplant the factfinder's judgment with our own. *In re A.B.*, 437 S.W.3d at 503; *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). We determine whether, on the entire record, "the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re A.B.*, 437 S.W.3d at 502 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). We must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* at 503. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a

–10–

factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (quoting *J.F.C.*, 96 S.W.3d at 266).

*Engaging in Conduct Which Endangers M.J.P.'s Physical and Emotional Well-Being*

We first consider Father's contention in his second issue on appeal that the evidence is legally and factually insufficient to support the trial court's finding pursuant to section 161.001(b)(1)(E) of the family code that Father engaged in conduct which endangers M.J.P.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Father contends the Department did not introduce legally or factually sufficient evidence to support this finding. Father argues that unsupported, conclusory opinions of the witnesses do not constitute evidence of probative force and are no more than mere surmise or suspicion.

In his recitation of the evidence presented at the termination trial, Father ignores the videotape interview in which he confessed to continued sexual abuse of M.J.P., the written statement in the form of a letter of apology to M.J.P. in which Father wrote that he wished he had gotten M.J.P. help when "this started," and the drawings of Father's hand and penis on which he drew lines to indicate how far he had inserted his finger into M.J.P.'s vagina and anus and how far he had inserted his penis into M.J.P.'s vagina.

Father also ignores his repeated invocation of protections of the Fifth Amendment when asked questions regarding his sexual abuse of M.J.P. and the adverse inferences the trial court was entitled to draw from Father's failure to respond to those questions. "A party may invoke his Fifth Amendment privilege against self-incrimination in a civil proceeding if he reasonably fears that the answer sought might incriminate him." *In re A.B.*, 372 S.W.3d 273, 275 (Tex. App.—Fort Worth 2012, no pet.) (citing *United States v. Balsys*, 524 U.S. 666, 671–72 (1998)). A termination proceeding is a civil proceeding for purposes of the privilege against self-incrimination. *Murray v. Tex. Dep't of Family & Protective Servs.*, 294, S.W.3d 360, 367 (Tex.

App.—Austin 2009, no pet.). In a civil case, a factfinder may draw negative inferences from a party's assertion of the privilege against self-incrimination. *See* TEX. R. EVID. 513(c); *see also Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them); *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995); *Webb v. Maldonado*, 331 S.W.3d 879, 883 (Tex. App.—Dallas 2011, pet. denied). Prior to Father's testimony at the termination trial, the trial court admonished him that, as the factfinder in the civil proceeding, it could make adverse inferences from Father's invocation of his Fifth Amendment privilege against self-incrimination. Accordingly, the trial court was free to draw negative inferences from Father's assertion of the privilege against self-incrimination in refusing to testify in response to questions regarding probative evidence offered against him. *See In re C.J.F.*, 134 S.W.3d 343, 352 (Tex. App.—Amarillo 2003, pet. denied) (jury could draw adverse inference against parent in termination case who pleaded Fifth Amendment to questions about drug use and actions on day of child's death).

"'Endanger' means 'to expose to loss or injury; to jeopardize.'" *In re R.G.*, 61 S.W.3d 661, 667 (Tex. App.—Waco 2001, no pet.) (quoting *Tex. Dep't of Human Servs v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256. "It is beyond question that sexual abuse is conduct that endangers a child's physical or emotional well-being." *In re A.B.*, 125 S.W.3d 769, 775 (Tex. App.—Texarkana 2003, pet. denied) (citing *In re R.G.*, 61 S.W.3d at 667); *see also In re N.K.*, 399 S.W.3d 322, 331, n.3 (Tex. App.—Amarillo 2013, no pet.); *In re E.A.G.*, 373 S.W.3d 129, 143 (Tex. App.—San Antonio 2012, pets. denied); *In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied). Based on the evidence in the record, the trial court could reasonably form a firm belief or conviction that Father engaged in continuous sexual abuse of M.J.P. and that course of conduct

endangers M.J.P.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re A.B.*, 437 S.W.3d at 502 (factual sufficiency); *In re J.P.B.*, 180 S.W.3d at 573 (legal sufficiency). We conclude the evidence is both legally and factually sufficient to support the trial court's finding that Father engaged in conduct which endangers M.J.P.'s physical or emotional well-being. We resolve Father's second issue against him.

A finding of only one ground for termination alleged under section 161.001(b)(1) is sufficient to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see also In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.) ("If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights.") (quoting *In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.)). Therefore, it is not necessary to address Father's remaining arguments regarding the other four predicate grounds under section 161.001(b)(1) contained in the judgment of termination as set out in Father's first, third, fourth, and fifth issues on appeal. *See* TEX. R. APP. P. 47.1.

### *Best Interest of M.J.P.*

In his sixth issue, Father contends there is legally and factually insufficient evidence to support the trial court's finding that termination of his parental rights is in M.J.P.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). A judicial determination of the "best interest" of a child is "not dependent upon, or equivalent to, a finding that the child has been harmed by abuse or neglect or is in danger of such harm. Rather, 'best interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding) (plurality op.). In reviewing a factfinder's best interest finding, we consider several nonexclusive factors, including (1) the

desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the person seeking custody; (5) the programs available to assist the person seeking custody in promoting the best interest of the child; (6) plans for the child by the person seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (in reviewing a best-interest finding, appellate court "consider[s], among other evidence, the *Holley* factors"). The *Holley* factors are not exhaustive. *In re C.H.*, 89 S.W.3d at 27. Some of the listed factors may be inapplicable to a case and other factors not on the list may also be considered when appropriate. *Id.* The absence of evidence about some of the factors would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the best interest of the child, particularly if the evidence was undisputed that the parental relationship endangered the safety of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence of one of the predicate acts for termination under section 161.001(1) of the family code may also be relevant to determining the best interest of the child. *Id.* at 27–28.

The first *Holley* factor is the desires of the child. M.J.P. did not testify at the termination trial. However, Kelly testified at the termination trial that her recommendation of termination of Father's parental rights to M.J.P. was based in part on M.J.P.'s wishes, and Depew testified M.J.P. did not want to have any contact with Father. We conclude on the record of this case that this factor weighs in favor of termination of Father's parental rights to M.J.P.

We next consider the second, fourth, and fifth *Holley* factors together. The second factor considers the child's current and future physical and emotional needs; the fourth factor considers

the parental abilities of the person seeking custody; and the fifth factor considers the programs available to assist the person seeking custody in promoting the best interest of the child. The evidence at trial was that M.J.P. was undergoing psychological counseling and treatment as a result of Father's sexual abuse of her and she would require such counseling and treatment for some time to come. Father, who is incarcerated for life, is unable to provide future physical or emotional support for M.J.P. or to assist with the psychological counseling and treatment M.J.P. requires as a result of his sexual abuse of her. Father is unable to provide a place for M.J.P. to live because of his incarceration, and Father did not testify as to any program available to him that would help M.J.P. with her future physical and emotional needs. We conclude on the record of this case that these factors weigh in favor of termination of Father's parental rights to M.J.P.

The third *Holley* factor is the emotional and physical danger to the child now and in the future. Father is incarcerated serving a life sentence for a conviction relating to his sexual abuse of M.J.P., and it does not appear that he poses a physical danger to her at this time. However, Powers testified that M.J.P. has experienced extreme trauma, and Father's retention of parental rights, and the attendant ability to exercise power and control over M.J.P., would negatively impact her healing process. We conclude on the record of this case, this factor weighs in favor of termination of Father's parental rights to M.J.P.

We consider the sixth *Holley* factor, Father's plans for M.J.P., and seventh *Holley* factor, the stability of the home or proposed placement of M.J.P., together. The record contains no evidence of Father's proposed plans for M.J.P., and Father is unable to provide a place for M.J.P. to live because of his incarceration. The record established the Department had withdrawn its effort to terminate Mother's parental rights to M.J.P., M.J.P. had been returned to Mother's supervised care, and the Department planned for that placement of M.J.P. with Mother to

–15–

continue. We conclude on the record of this case, these factors weigh in favor of termination of Father's parental rights to M.J.P.

We consider the eighth and ninth *Holley* factors together. These factors consider acts or omissions of the Father that indicate the parent-child relationship is improper, as well as any excuses for Father's behavior. As set out above, the evidence at the termination trial was legally and factually sufficient to establish Father engaged in continued sexual abuse of M.J.P., and that course of conduct endangers M.J.P.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re A.B.*, 437 S.W.3d at 502 (factual sufficiency); *In re J.P.B.*, 180 S.W.3d at 573 (legal sufficiency). The evidence also established Father engaged in other behaviors indicating the parent-child relationship between Father and M.J.P. is improper. Further, rather than accepting responsibility for his actions, Father blamed his sexual abuse of M.J.P. on her, stating in his videotaped interview and his written statement in the form of a letter of apology to M.J.P. that M.J.P.'s alternate personality, John, forced him to have sex with her and made him a "prisoner to keep [M.J.P.] happy." Given the gravity of Father's actions and his failure to recognize that his conduct was detrimental to M.J.P., we conclude these two factors weigh in favor of termination of Father's parental rights to M.J.P.

The trial court could have reasonably determined that Father poses a danger to M.J.P.'s emotional and physical well-being. Considering the *Holley* factors, and the record as a whole, we conclude legally and factually sufficient evidence supports the trial court's finding that termination of Father's parental rights to M.J.P. is in M.J.P.'s best interest. We resolve Father's sixth issue against him.

**Conclusion**

We conclude there is legally and factually sufficient evidence to support the trial court's findings that Father engaged in conduct which endangers M.J.P.'s physical or emotional well-

being and that termination of Father's parental rights is in M.J.P.'s best interest.  We affirm the trial court's judgment terminating Father's parental rights to M.J.P.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

161293F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF M.J.P., A CHILD

No. 05-16-01293-CV

On Appeal from the 296th Judicial District Court, Collin County, Texas,
Trial Court Cause No. 296-30044-2015.
Opinion delivered by Justice Fillmore, Chief Justice Wright and Justice Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court terminating Lawrence Richard Parker, Jr.'s parental rights to M.J.P. is **AFFIRMED**.

Judgment entered this 17th day of February, 2017.