

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-11-00362-CV**

IN THE INTEREST OF A.B. AND
K.M.B., THE CHILDREN

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY

----------

## OPINION

----------

## I. INTRODUCTION

Appellant D.B. (Father) appeals the trial court's order terminating his parental rights to his children, A.B. and K.M.B. In two issues, Father argues that the trial court violated his due process rights by erroneously instructing him about his Fifth Amendment privilege against self-incrimination and that his trial counsel was ineffective. We will affirm.

## II. BACKGROUND

The Department of Family and Protective Services (DFPS) conducted an investigation after receiving a referral in February 2010 regarding the children. Concerned about allegations of domestic violence, a previous conviction by Father involving child abuse, and K.B.'s (Mother) mental health, DFPS filed its petition for protection, for conservatorship, and for termination in suit affecting the parent-child relationship. The trial court subsequently appointed DFPS temporary managing conservator, placed the children with their maternal grandmother, and ordered both Father and Mother to perform a service plan.

During a scheduled visit with the children at a CPS office, a DFPS employee observed that Father had an erection while bouncing then ten-month-old K.M.B. on his lap. Shortly thereafter, during another scheduled visit with the children, a DFPS employee reported that she thought Father had inappropriately touched then eight-year-old A.B. on her chest. A.B. confirmed the employee's concern when A.B. told prosecutors investigating the allegations that Father had touched her chest. At the time of the termination trial, Father was incarcerated pending trial for the offense of indecency with a child by contact.

Pleased with Mother's performance of her service plan, the trial court ordered a monitored return of the children to Mother and later severed DFPS's suit against Mother from the action against Father. At the termination bench trial, in the course of discussing DFPS's plan to call Father as a witness, the trial court

explained the following to Father regarding his Fifth Amendment privilege against self-incrimination:

> I did research further that issue since our last discussion and am left with the firm conviction that the current state of the law is that while there is no Fifth Amendment privilege to refuse to answer all written discovery questions that may be propounded in a civil case and those Fifth Amendment assertions must be made on a question-by-question basis, that the same principle does not apply to testimony at the time of trial; *that is, it's an all-or-nothing proposition. You either testify and answer all questions or you invoke your Fifth Amendment privilege and answer no questions*. [Emphasis added.]

Father informed the trial court the next day that he did not want to testify, and the trial court did not require Father to take the stand. The trial court terminated Father's parental rights to the children, finding by clear and convincing evidence (1) that Father had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; (2) that Father had engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered the children's physical or emotional well-being; (3) that Father had failed to comply with the provisions of a court order that specifically established the actions necessary for Father to obtain the return of the children; and (4) that termination of Father's parental rights to the children was in the children's best interests.

### III. FIFTH AMENDMENT

In his first issue, Father argues that the trial court erred and violated his due process rights by instructing him that he "either testify and answer all questions or you invoke your Fifth Amendment privilege and answer no

3

questions." DFPS responds that the trial court's instruction was incorrect but that Father failed to preserve error.

A party may invoke his Fifth Amendment privilege against self-incrimination in a civil proceeding if he reasonably fears that the answer sought might incriminate him. *United States v. Balsys*, 524 U.S. 666, 671–72, 118 S. Ct. 2218, 2222 (1998); *In re Speer*, 965 S.W.2d 41, 45 (Tex. App.—Fort Worth 1998, orig. proceeding). However, unlike in criminal proceedings, blanket assertions of the privilege are impermissible—the privilege must be asserted on a question-by-question basis. *Murray v. Tex. Dep't of Family & Protective Servs.*, 294 S.W.3d 360, 366 (Tex. App.—Austin 2009, no pet.); *Speer*, 965 S.W.2d at 46; *see Cuba v. State*, 905 S.W.2d 729, 733 (Tex. App.—Texarkana 1995, no pet.) (explaining that accused in criminal proceeding who testifies waives right against self-incrimination and may be cross-examined on whole case). A termination proceeding is a civil proceeding for purposes of the privilege against self-incrimination. *Murray*, 294 S.W.3d at 367.

Here, the trial court should have required Father to take the stand and assert his Fifth Amendment privilege on a question-by-question basis. However, Father never objected to or otherwise contested the trial court's inaccurate instruction. Consequently, Father failed to preserve this issue for appellate review. *See* Tex. R. App. P. 33.1(a)(1), (2); *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). We overrule Father's first issue.

## IV. INEFFECTIVE ASSISTANCE

In his second issue, Father argues that his trial counsel was ineffective for failing to object to the trial court's inaccurate Fifth Amendment instruction.

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). Parents are entitled to effective counsel at a termination proceeding. *In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003).

Father's argument fails under the second *Strickland* prong because he has not shown that there is a reasonable probability that the trial court would not have terminated his parental rights to the children had he testified.[1] Father filed a motion for new trial, but he did not raise ineffective assistance, and there is no record of a hearing at which he detailed what his testimony would have consisted of had he testified, nor is there any other source in the record from which we can glean what Father would have testified about. Also, Father does not challenge the trial court's conclusions of law that he knowingly placed or knowingly allowed

---

[1]There is no requirement that we approach the two-pronged inquiry of *Strickland* in any particular order, or even that we address both components of the inquiry if the defendant makes an insufficient showing on one component. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

the children to remain in conditions or surroundings that endangered their physical or emotional well-being; that he engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered the children's physical or emotional well-being; or that he failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the children. Without any idea of Father's testimony, and in light of the unchallenged conclusions of law supporting the trial court's order, we are unable to conclude that there is a reasonable probability that the result of the termination proceeding would have been different had Father testified. Accordingly, we overrule Father's second issue.

## V. CONCLUSION

Having overruled both of Father's issues, we affirm the trial court's order terminating Father's parental rights to A.B. and K.M.B.


BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: June 21, 2012

6