**Opinion filed April 30, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00321-CV

_____

## IN THE INTEREST OF C.F., A CHILD

**On Appeal from the 90th District Court**
**Stephens County, Texas**
**Trial Court Cause No. CV33606**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother[1] and father of C.F.[2] Appellant presents a single issue on appeal in which he challenges the trial court's finding that termination of his

---

[1]The mother voluntarily relinquished her parental rights to C.F. prior to the final termination hearing. The trial court signed an interlocutory decree of termination, which became final when it signed its order that terminated the father's parental rights to C.F. Only the father appealed.

[2]To protect the identity of C.F. and C.F.'s family and relatives, we use pseudonyms or initials to refer to them. *See* TEX. R. APP. P. 9.8(b).

parental rights is in C.F.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2025). We affirm the trial court's order.

I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. *Id.* To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1), and that termination is in the best interest of the child. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant: (1) knowingly placed or knowingly allowed C.F. to remain in conditions or surroundings which endangered the physical or emotional well-being of C.F.; (2) engaged in conduct or knowingly placed C.F. with persons who engaged in conduct which endangered the physical or emotional well-being of C.F.; and (3) constructively abandoned C.F. who had been in the permanent or temporary managing conservatorship of the Texas Department of Family and Protective Services (the Department) for not less than six months, and despite the Department's reasonable efforts to return C.F. to Appellant, he did not regularly visit or maintain significant contact with C.F., and demonstrated an inability to provide C.F. with a safe environment. *See id.* § 161.001(b)(1)(D), (E), (N). The trial court further found that termination of Appellant's parental rights is in C.F.'s best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required

appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (first quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); and then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional

and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parents. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of a parent's parental rights is in the children's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d

4

825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Moreover, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *The Evidence Presented at Trial*

The Department received a report in November 2024 that Appellant and the mother were using methamphetamine while caring for C.F., who was less than two months old. Appellant was also suspected of abusing the mother based on visible injuries to the mother's face and head. At that time, he was on deferred adjudication community supervision for the offense of retaliation, a third-degree felony, that he committed in 2023. *See* TEX. PENAL CODE ANN. § 36.06 (West Supp. 2025). During its investigation, the Department learned that C.F., C.F.'s mother, and Appellant were living in a "fifth wheel camper" on Appellant's "buddy's property." Appellant's brother—a methamphetamine user who was also on probation—and Appellant's mother were believed to reside in the camper as well.

After unsuccessful attempts to assess the safety of the home, the Department sought and was granted temporary managing conservatorship of C.F. on November 20, 2024. C.F. was removed the same day and placed in the care of his maternal grandparents, K.W. and J.W.

When the Department took custody of C.F., he smelled of cigarette smoke, his clothes were dirty, and the bottle that the mother had for him smelled of spoiled milk. His pacifier was also covered in dirt. The mother also admitted to using methamphetamine with Appellant in the presence of the child. The parents and C.F. submitted to drug screens soon after the child's removal, and all tested positive for methamphetamine. Appellant also tested positive for methamphetamine in December 2024 and admitted to methamphetamine use.

The Department created a family plan of service for Appellant in December 2024 that the trial court approved and adopted as an order of the court. However, Appellant was arrested in early 2025 for violating the conditions of his deferred adjudication and he was incarcerated for the remainder of the proceedings. He was subsequently adjudicated guilty in March 2025 and sentenced to three years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice (TDCJ). In May 2025, because he had exposed C.F. to methamphetamine, Appellant was indicted for endangering a child, a state jail felony. *See* PENAL § 22.041.

The trial court held the final termination hearing on October 8, 2025. Appellant's child endangerment charges were still pending at the time. During the hearing, testimony was presented from three witnesses: Appellant, Department caseworker Jeni Schantz, and Presley Cox, C.F.'s Court Appointed Child Advocate (CASA). The Department also introduced records showing that Appellant's criminal history began in 2020 when he was arrested for committing aggravated robbery.

Appellant testified telephonically from the Hamilton Unit of TDCJ. Although he had been released on parole, it was conditioned upon his successful completion of a six-month inpatient program at the Substance Abuse Felony Punishment Facility

(SAFPF). Appellant explained that he had been confined in SAFPF for a month and could not guarantee that he would successfully graduate from the program in the next five months.

Throughout Appellant's testimony, which lasted for over two hours, he "plead[ed] the Fifth" at least sixty times. He did, however, admit to violating the conditions of his deferred adjudication by using methamphetamine, and stated that C.F. was removed from his care because he "made a mistake, and . . . couldn't provide for [C.F.] like [he] wanted to." Appellant likewise acknowledged that he did not complete his required services and failed to maintain employment before his arrest.

Appellant asked the trial court to allow him to remain, at the very least, as a possessory conservator to C.F. He intended to live with his father and stepmother upon his release from SAFPF and assumed that C.F. would "[p]robably" be able to live in the home with him. But he had only briefly discussed the living situation with his father, who had met C.F. only once. He then refused to answer whether his father physically abused his mother, or whether his father had been incarcerated. Appellant had no contingency plan for C.F. if he were convicted of child endangerment and sentenced to imprisonment, agreed that he could not provide C.F. with a safe home environment, and confirmed that it is not in C.F.'s best interest to live with Appellant's mother or brother.

Schantz testified that J.W. and K.W. treat C.F. "like their son," "are very active with him," and "are constantly meeting his needs." C.F. "loves them very much and is very bonded with them." C.F. needed ongoing physical therapy and occupational therapy because he "was having issues with turning his head and the functioning of it," which "also affect[ed] the way he walks and his lack of mobility and crawling." Schantz explained that "when children are laid on their back[s] for

7

extended periods of time . . . it stiffens up muscles and tendons in the neck." C.F. had improved—he was "almost crawling on all fours" and was "able to walk with assistance" at the time of the final hearing—but was still considered delayed.

At the conclusion of the hearing, the trial court terminated Appellant's parental rights pursuant to Section 161.001(b)(1)(D), (E), and (N), and found termination to be in C.F.'s best interest. *See* FAM. § 161.001(b)(1)(D), (E), (N), (b)(2). This appeal followed.

### III. *The Best Interest of the Child*

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in C.F.'s best interest. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trier of fact, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights is in the best interest of C.F. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding,

8

"particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interest[] of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of a child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

Appellant does not contest the trial court's findings that he endangered C.F. as set forth in Section 161.001(b)(1)(D) and (E), or that he constructively abandoned C.F. pursuant to Section 161.001(b)(1)(N). So long as the evidence supports those findings, they are valid grounds for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552. In this regard, the evidence that Appellant endangered and constructively abandoned C.F. could be considered by the factfinder in determining whether termination is in C.F.'s best interest. *See E.C.R.*, 402 S.W.3d at 249–50; *In re C.J.O.*, 325 S.W.3d at 266.

We first note that the negative inferences that are permitted by Appellant's repeated assertion of his Fifth Amendment privilege against self-incrimination supports the trial court's best interest finding. "A party may invoke his Fifth Amendment privilege against self-incrimination in a civil proceeding if he reasonably fears that the answer sought might incriminate him." *In re A.B.*, 372 S.W.3d 273, 275 (Tex. App.—Fort Worth 2012, no pet.) (citing *United States v. Balsys*, 524 U.S. 666, 671–72 (1998)); *see* U.S. CONST. amend. V. In civil cases, including involuntary termination proceedings, a factfinder may draw negative

inferences from a party's assertion of the privilege against self-incrimination. *See* TEX. R. EVID. 513(c); *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007); *A.B.*, 372 S.W.3d at 276; *In re M.R.*, No. 05-25-00162-CV, 2025 WL 1785346, at *2 n.5 (Tex. App.—Dallas June 27, 2025, no pet.) (mem. op.).

Here, based on Appellant's multiple assertions of the privilege, the trial court could have reasonably inferred that Appellant:

- exposed C.F. to methamphetamine through his and the mother's methamphetamine use in C.F.'s presence, which resulted in C.F. testing positive for methamphetamine;

- was aware that his and the mother's methamphetamine use in C.F.'s presence endangered C.F.;

- chose not to take C.F. to his medical appointments out of concern that C.F. would test positive for methamphetamine;

- continued using methamphetamine after C.F. was removed, and has used illegal drugs in addition to methamphetamine and marihuana;

- got into a fight on January 17, 2025 outside his camper;

- associated with others who engaged in criminal activity, including his brother, and used methamphetamine with Appellant's mother and brother; and

- physically abused the mother and had law enforcement called because of domestic violence between him and the mother.

We begin with Appellant's persistent drug use, which indisputably endangered C.F. and "implicates most of the *Holley* factors." *In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). It is well-established that a parent's continuing pattern of drug use can support a best interest finding because of the "attendant risks to employment, housing, and prolonged absence from the child." *In re R.R.A.*, 687 S.W.3d 269, 279–81 (Tex. 2024); *see also In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (the parents' years of drug use supported the trial court's best interest finding). And a parent's decision to

engage in illegal drug use during the pendency of a termination suit when the parent is at risk of losing a child is unquestionably contrary to the child's best interest. *See J.S.*, 687 S.W.3d at 551; *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

As set forth above, the trial court could have reasonably concluded that Appellant's mother and brother lived in the camper and used methamphetamine with Appellant and C.F.'s mother. *See In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (Appellate courts must afford due deference to the factfinder's credibility determinations.). Appellant's brother was on probation and actively used methamphetamine, while Appellant's mother is a convicted felon who may have also been a methamphetamine user. *See In re E.A.R.*, 583 S.W.3d 898, 909 (Tex. App.—El Paso 2019, pet. denied) ("Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in [the] home is a part of the [child's] 'conditions or surroundings'" under subsection (D).).

In addition to surrounding C.F. with methamphetamine users, Appellant and the mother avoided taking C.F. to his required medical appointments, were physically violent with each other, and subjected C.F. to unsanitary living conditions. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best interest finding); *In re O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.) ("Physical violence in the home leads to an unstable and unpredictable environment for children."); *In re A.L.*, 545 S.W.3d 138, 148 (Tex. App.—El Paso 2017, no pet.) (considering parent's "extraordinarily unsanitary" home in best interest analysis). Rather than making the necessary changes for C.F.'s safety, Appellant refused to accept responsibility for C.F.'s removal and continued his relationship with the

mother. His actions suggest an inability or unwillingness to achieve the permanence and stability that C.F. needs to thrive. *See J.A.R.*, 696 S.W.3d at 257 ("Stability and permanence are paramount in the upbringing of children.").

Appellant's knowledge of the dangerous living conditions in which he placed C.F., and his refusal to improve these conditions for the benefit of C.F.'s safety, permitted the rational inference that he was, at minimum, indifferent to C.F.'s physical health and emotional well-being. Such "evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in a child's best interest." *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *see also In re A.M.R.*, 652 S.W.3d 117, 125 (Tex. App.—Waco 2022, pet. denied) (considering the parent's failure to address "anger issues, violent tendencies, poor relationship choices, . . . and instability in homes and employment" in best interest determination). Further, Appellant's drug use, physical violence, and neglect of C.F.'s medical needs "pose[d] an emotional and physical danger to" C.F. now and in the future and showed his unwillingness or inability to meet C.F.'s needs now and in the future. *A.J.D.-J.*, 667 S.W.3d at 823; *see Holley*, 544 S.W.2d at 371–72.

Appellant's minimization of culpability coincides with his failure to complete the tasks and services required by his service plan, which, like Appellant's other conduct and failures, further supports the trial court's best interest finding. *See E.C.R.*, 402 S.W.3d at 249 (a parent's failure to complete court-ordered services can support a best interest finding); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."). Appellant purportedly participated in

various courses during his incarceration, including parenting classes and a program to help manage anger and related issues. However, he could not articulate what he learned from his parenting classes or other courses, and again "[p]lead[ed] the Fifth" in response to further questioning on those topics. He also claimed to be engaged in the 12-step program of Narcotics Anonymous and Alcoholics Anonymous (NA/AA) but was unfamiliar with the first step and then stated he was "going to plead the Fifth." When asked whether he knew what C.F.'s needs were, Appellant responded: "I'm literally in the dark. I'm not sure what he needs as of right now. I mean, I don't know physical needs." Yet, during his incarceration, he made no attempt to contact C.F. and admitted that he neither inquired about C.F.'s well-being nor sought any updates from Schantz. Thus, the trial court could have logically concluded that Appellant failed to properly address the Department's concerns. *See Holley*, 544 S.W.2d at 371–72; *E.C.R.*, 638 S.W.3d at 769.

Finally, given the child-centered focus of the best interest inquiry, we do not discount or minimize C.F.'s positive strides since removal. *See J.W.*, 645 S.W.3d at 747; *Holley*, 544 S.W.2d at 371–72. C.F. was just over one at the time of the final hearing. When a child is too young to express their desires, the factfinder may consider whether the child has bonded with their caregiver, is well-cared for by them, and whether the child has spent minimal time with a parent. *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.); *see also In re N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (evidence showing that a young child had bonded with foster family supported the trial court's best interest finding). Although C.F. was too young to articulate his desires, the evidence demonstrated that he was "very bonded" with K.W. and J.W., who were "really good parents" to him, met all his needs, and hoped to adopt him. In fact,

13

Appellant agreed that they were adequate caregivers who acted in C.F.'s best interest.

Appellant, by contrast, proposed his father's home as a potential living arrangement for C.F., but his father refused to allow the Department to conduct a home study. *See J.D.*, 436 S.W.3d at 119–20 ("The fact finder may compare the contrasting plans for a child by the parent and the Department and consider whether the plans and expectations of each party are realistic or weak and ill-defined."). Appellant had not contemplated childcare if he were to secure employment, nor did he have an alternative home for C.F. if he was sentenced to imprisonment for child endangerment. Therefore, the trial court could have rationally inferred that relinquishing C.F. to Appellant's care would subject him to a life of uncertainty and instability, which is contrary to C.F.'s best interest. *See In re E.M.*, No. 11-24-00310-CV, 2025 WL 1240792, at *10 (Tex. App.—Eastland Apr. 30, 2025, no pet.) (mem. op.) (citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

The trial court was presented with multiple circumstances from which it may have reasonably discerned a "pattern of conduct that is inimical to the very idea of child-rearing." *J.F.-G.*, 627 S.W.3d at 316 (quoting *C.H.*, 89 S.W.3d at 28); *Holley*, 544 S.W.2d at 371–72. Considering Appellant's acts and omissions, the emotional and physical danger to C.F. now and in the future, the emotional and physical needs of C.F. now and in the future, Appellant's criminal history, and his history of drug use, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in C.F.'s best interest. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's sole issue on appeal.

14

IV. *This Court's Ruling*

We affirm the order of the trial court.

W. STACY TROTTER

JUSTICE

April 30, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.